PITMAN, J.
| defendant Thierry Woods pled guilty to attempted second degree murder. He was sentenced to 50 years’ imprisonment at hard labor, without the benefit of probation, parole or suspension of sentence. Defendant appeals his sentence as excessive. For the reasons stated herein, we affirm Defendant’s conviction and sentence.

FACTS

This case arises from a shooting that occurred on March 29, 2012, in Webster Parish, Louisiana. During the night, Defendant was attempting to sleep at his mother’s house, but experienced paranoid dreams of people who were “out to get him.” In the early hours of the morning, he left his mother’s house walking and carrying a loaded .38 caliber pistol. Defendant came upon a woman, Sarah Kelley Bailey, and asked her what was going on and “Why are these people messing with me?” As he was speaking to her, a man drove up in a white pickup truck. Defendant pointed his gun at the vehicle and told the occupant to leave him alone. He pointed the gun at himself, then turned to Ms. Bailey and fired, shooting her in the head, and then left the scene.
At approximately 7:00 a.m., Minden police officers responded to a report of an accident involving a woman and found Ms. Bailey bleeding from an unknown injury. She was transported to LSUHSC via Li-feAir. The officers then responded to another call regarding a man who was walking down a nearby street waving a gun. They found Defendant in possession of a loaded .38 caliber pistol and detained him. After Defendant was advised of his Miranda rights, he admitted to shooting a white female in the head and told police that he did so because she did not answer his question to her. |2He later stated that he meant to kill her.
Defendant was charged with attempted second degree murder. He entered a plea of not guilty and filed a motion for appointment of a sanity commission. An order appointing that commission was entered. Defendant’s counsel asserted that he believed Defendant did not have the mental capacity to assist in his own defense.
Dr. Mark Vigen interviewed Defendant in August 2012. Defendant reported to *1088 Dr. Vigen that he had used marijuana daily since the age of 16. He also reported that, prior to the shooting, he had slept for only three hours and that he left his mother’s house to walk to his brother’s house to try to get some sleep there. No prior mental health problems were reported. Dr. Vigen observed no psychotic thoughts, hallucinations or delusions at the time of the evaluation and ultimately concluded that Defendant had the capacity to understand the nature and consequences of the proceedings and was able to assist in his defense. He was concerned, however, that Defendant may have been experiencing a dissociative episode at the time of the shooting, either a break from reality or substance-induced psychosis.
Dr. George Seiden interviewed Defendant in October 2012. He noted that Defendant reported that, prior to the shooting, he was having family problems and difficulty sleeping. He believed that everyone was trying to harm him, and he had planned to hide in the woods. Defendant reported no previous psychiatric symptoms. A mental status examination revealed mild depressive symptoms, disturbed sleep and some suicidal ideation. Defendant reported auditory and visual hallucinations at the time of his arrest. Dr. Seiden’s diagnosis was brief psychotic disorder and marijuana dependence. |sHe concluded that Defendant had the ability to assist in his own defense.
A sanity hearing was held on October 15, 2012. The trial court considered the reports of Drs. Seiden and Vigen. Based upon those reports, the trial court found that Defendant was competent to assist his counsel at trial. Formal arraignment was waived, and a plea of not guilty by reason of insanity was entered.
A motion to suppress the statements made to officers at the time of his arrest was filed on December 17, 2012, alleging that Defendant was unable to make a knowing and voluntary waiver of his Miranda rights. Following an evidentiary hearing on January 23, 2013, and based upon the testimony of investigating officers and the sanity reports, that motion was denied. Defendant filed a second motion for appointment of a sanity commission, and an order appointing that commission was entered. Counsel for Defendant asserted that further investigation of Defendant’s mental status prior to and during the commission of the offense was needed.
Dr. Seiden again interviewed Defendant on April 2, 2013, at which time, Defendant reported that some of the events prior to his arrest were hard to remember. Dr. Seiden noted that Defendant had reported mild visual and auditory hallucinations immediately preceding and^ following the offense and concluded that, at the time of the offense, “Mr. Woods, although apparently in a brief psychotic state, was capable of distinguishing right from wrong with reference to the specific conduct in question.”
Defendant was also interviewed by Dr. Richard Williams. Defendant admitted to smoking marijuana twice per day since the age of 15, but |4reported no prior auditory or visual hallucinations. Defendant expressed shame about shooting an innocent woman. Dr. Williams’ diagnosis was marijuana-induced psychotic disorder with delusions and marijuana dependence. He concluded that, at the time of the offense, Defendant was not suffering from any mental disease or defect which rendered him incapable of distinguishing right from wrong.
This matter was set for trial on May 13, 2013. On that date, Defendant appeared with court-appointed counsel, asserting that he was not satisfied with the representation of his counsel, but that he was ready to plead guilty. Defendant then entered a plea of guilty to attempted sec *1089 ond degree murder. The trial court ordered a presentence investigation report.
Defendant spoke on his own behalf at a sentencing hearing on July 1, 2013. He stated that he was sorry for his actions and asserted that he was hallucinating at the time of the shooting. The victim’s mother also made a statement asserting that, following the shooting, her daughter underwent seven surgeries and spent 5½ weeks at LSUHSC, three weeks in a rehabilitation facility and three months at West Jefferson Memorial. She stated that her daughter is required to have a shunt draining excess fluid from her brain for the rest of her life, has no vision in her right eye and has difficulty communicating. Her mother further testified that the relationship between her and her young daughter will never be the same.
The trial court reviewed the presentence investigation report and the facts of the crime. It noted that two psychiatrists found that Defendant was able to distinguish between right and wrong at the time of the offense, | ¡¡though no official determination of sanity was made. The trial court also noted that Defendant had two prior misdemeanor convictions, but no prior felony convictions. The trial court remarked on the violent nature and severity of the crime, which was a deliberate act of unprovoked violence against a stranger, and found no grounds which would excuse or justify the offense. After consideration of a victim’s impact statement, the trial court sentenced Defendant to 50 years’ imprisonment at hard labor, without the benefit of probation, parole or suspension of sentence.
A motion to reconsider sentence was filed, alleging the imposition of an excessive sentence. Defendant asserted that the trial court did not consider a mitigating factor, i.e., that he pled guilty and saved the victim the emotional anguish of a trial. The motion was denied without a hearing and this appeal followed.

DISCUSSION

Defendant’s only assignment of error is that the trial court erred in imposing a sentence that is unconstitutionally excessive because it serves no purpose and is grossly out of proportion to the-severity of the crime. He argues that he was experiencing a psychotic break at the time of the shooting and that his mental instability is a factor that merited substantial consideration by the trial court in determining the sentence to be imposed upon him. He further argues that the maximum sentence should be reserved for the worst of offenders and that he is not the worst of offenders. He claims that he did not act for any form of gain, did not attempt to hide his guilt and had no prior similar experiences. Defendant asserts that, with proper psychiatric care, counseling and diagnosis, he would be unlikely to |ficommit further crimes. For these reasons, Defendant claims that his sentence of 50 years’ imprisonment at hard labor without benefit of probation, parole or suspension of sentence is unnecessarily harsh, given the trial court’s discretion to impose a less severe sentence.
The state argues that Defendant’s mental status and excessive marijuana use were not raised as mitigating factors in his motion to reconsider sentence, and only asserted the trial court’s failure to consider that he pled guilty and saved the victim mental anguish. The state claims that La. C. Cr. P. art. 881.1 precludes Defendant from raising the issue of mental instability on appeal because it was not raised in the trial court. The state asserts that the sentence should be reviewed only for constitutional excessiveness. Since the sentence imposed was within the statutory limits and was based upon a presentence *1090 investigation report, the state claims that the sentence is not unconstitutionally excessive.
La. C. Cr. P. art. 881.1(E) provides as follows:
Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
Under that article, a defendant must set forth the specific grounds upon which the motion is based in order to raise an objection to the sentence on appeal. If the defendant does not allege any specific ground for excessiveness or present any argument or evidence not previously considered by the court at original sentencing, then the defendant does not lose the right to appeal the sentence, he is simply relegated to having the appellate court | consider the bare claim of excessiveness. State v. Humphries, 48,235 (La.App.2d Cir.9/25/13), 124 So.3d 1177, citing State v. Mims, 619 So.2d 1059 (La.1993).
The penalty for attempted second degree murder is imprisonment at hard labor for a minimum of 10 years, up to a maximum of 50 years, without the benefit of parole, probation or suspension of sentence. La. R.S. 14:27; La. R.S. 14:30.1.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Watson, 46,572 (La.App.2d Cir.9/21/11), 73 So.3d 471. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App.2d Cir.8/13/08), 989 So.2d 267, writ denied, 08-2697 (La.9/18/09), 17 So.3d 388. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 08-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Taves, 03-0518 (La.12/3/03), 861 So.2d 144; State v. Caldwell, 46,718 (La.App.2d Cir.11/2/11), 78 So.3d 799.
The second portion of the sentence requires that a determination be made regarding the constitutional exces-siveness of a sentence. A sentence violates La. Const. Art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.1/15/02), 805 So.2d 166; State v. Washington, 46,568 (La. *1091 App.2d Cir.9/21/11), 73 So.3d 440, writ denied, 11-2305 (La.4/27/12), 86 So.3d 625.
The trial judge is given a wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7; State v. Diaz, 46,750 (La.App.2d Cir.12/14/11), 81 So.3d 228. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Williams, supra; State v. Free, 46,894 (La.App.2d Cir.1/25/12), 86 So.3d 29.
While there is some evidence in this matter to suggest that Defendant’s mental capacity at the time of the offense was questionable, he did not assert the mitigating factor of mental impairment in his motion to reconsider sentence. For that reason, he is precluded by La.C.Cr. P. art. 881.1(E) from raising the issue of mental instability on appeal, and his sentence is to be reviewed only for constitutional exces-siveness.
The trial court adequately considered the presentence investigation report and the factors of La. C. Cr. P. art. 894.1. It found that Defendant had used a dangerous weapon in the commission of an act of violence against the victim. There was no provocation or excuse for this senseless crime of violence perpetrated against a stranger. The victim was shot in the head and remains permanently disabled. Although the trial court imposed the maximum sentence allowed under the law for attempted second degree murder, the severity of the sentence imposed is in no way disproportionate to the severity of the offense. The sentence imposed is within the statutory guidelines and is not constitutionally excessive given the pain and suffering inflicted upon the victim. Therefore, this assignment of error is without merit.

CONCLUSION

For the foregoing reasons, we affirm the conviction and sentence of Defendant, Thi-erry Woods.
AFFIRMED.